HUGH RINER, E. D. TISON and RICHARD GRANT v. STATE.

176 So. 38.
Division A.
Opinion Filed July 29, 1937.
Rehearing Denied September 3, 1937.

*Zewadski & Pierce,* for Plaintiffs in Error;

*Cary D. Landis,* Attorney General, and *Roy Campbell,* Assistant Attorney General, for the State.

BUFORD, J.—Under an indictment charging murder in the first degree plaintiffs in error were convicted of murder in the second degree and sued out writ of error.

In the brief plaintiffs in error present two questions for our determination, as follows:

"First Question. Where in a first degree murder case the sole issue at the trial was the identity of the accused as being the perpetrators of the holdup and murder, should a verdict of second degree murder be upheld where proof of the identity is unsatisfactory and the verdict is wholly inapplicable to the facts in issue?"

"Second Question. Where the sole issue in a first degree murder case is the identity of the defendants as being the persons who staged the holdup resulting in the murder of a bystander, and the evidence of identity is weak and unsatisfactory, should the State be allowed to introduce pho-

tographs and other evidence by a firearms expert, the purpose of which evidence is to show similarity between test bullets and bullets found at the scene of the holdup, but which evidence shows, both from the photographs and from the testimony of the alleged expert himself, to be wholly unreliable and inconclusive, yet having a strong tendency to unduly influence and prejudice the jury."

Where the evidence is such that it would have sustained a verdict of murder in the first degree a verdict and judgment of murder in the second degree will not be disturbed because of the insufficiency of the evidence. Larmon v. State, 81 Fla. 553, 88 Sou. 471.

The contention is made that evidence establishing the identity of the defendants was too uncertain to be relied upon for a conviction. The direct evidence of identity was by way of identifying the voices of two defendants. That identification may be properly made in such manner has been recognized in this jurisdiction for a number of years. In the case of Mack v. State, 54 Fla. 55, 44 Sou. 706, in an opinion prepared for this Court by Mr. Justice Taylor some thirty years ago it was said:

"As long ago as the year 1660, in the trial of the regicide, William Hulet, a witness was permitted to identify the defendant by his voice. 5 Howell's State Trials, 1186-1187; Henry Harrison's Trial, 12 Howell's State Trials, 834; text 861; Trials of the Threshers, 30 Howell's State Trials, 198, and ever since this early period it has been universally recognized by the courts on this continent and in England as being admissible and legitimate evidence to establish identity. In the case of Commonwealth v. Hayes, 138 Mass. 185, it was held to be competent evidence to support a conviction where a prosecuting witness identified the defendant solely by his voice, and where the witness had never heard the defendant's voice but once before the commission of the

crime, and that on the same day that the crime was committed, and then heard him speak only a few words. So also the case of Commonwealth v. Williams, 105 Mass. 62."

Numerous other cases are cited in that opinion in support of the enunciation.

This is a stronger case than was the Mack case because the witnesses who testified that they identified two of the defendants by their respective voices testified that they had heard the voices on numerous occasions. So it is that we must hold that the identity of the defendants has been established by competent evidence if believed by the jury. The record discloses many corroborating circumstances supporting the conviction of the defendants.

The second question is addressed to the action of the court in permitting a firearms expert, a man by the name of Peterson, to testify to conclusions based on his expert opinion that a pistol identified as the pistol which the defendant Tison had on the day of the homicide delivered to one of the other defendants was the same pistol with which the deceased victim of the homicide was killed.

We have carefully read the testimony of Mr. Peterson and reached the conclusion that he was shown by the testimony to be fully qualified to testify as an expert in regard to firearms and to draw a reliable conclusion as to whether or not the bullet found in the body of the deceased was fired from the pistol introduced in evidence. The weight and credibility of his evidence was a matter for the jury to determine and apparently the jury gave credence to Peterson's testimony.

The record discloses evidence sufficient to have sustained a verdict and judgment of murder in the first degree and as no reversible error is disclosed as to any matter affecting the trial the judgment should be affirmed and it is so ordered.

852.

Affirmed.

ELLIS, C. J., and TERRELL, J., concur.

BROWN and CHAPMAN, J. J., concur in the opinion and judgment.